**IN the MATTER OF: Jeffrey Alan MARTIN,**

**Griffin E. Howell, III, Trustee for the Estate of Jeffrey Alan Martin, Plaintiff.**

**v.**

**Martin Financial, LLC, Martin Financial, Inc., TMAR Ltd, LLC, Q-Tan, LLC, Marada, Inc., and Conni L. Martin (a/k/a Conni L. Shaw), Defendants.**

**CASE NUMBER 14–11743–WHD ADVERSARY PROCEEDING NO. 14–1061–WHD**

United States Bankruptcy Court, N.D. Georgia, Newnan Division, **Newnan Division.**

Signed October 16, 2015

Kara E. Adler, Lisa McVicker Wolgast, Morris, Manning & Martin, LLP, Atlanta, GA, for Plaintiff.

M. Denise Dotson, M. Denise Dotson, LLC, Atlanta, GA, Richard D.C. Schrade, Jr., McDonough, GA, for Defendants.

## IN PROCEEDINGS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

### *ORDER*

W. Homer Drake, U.S. Bankruptcy Court Judge

This matter arises between the Plaintiff, Griffin Howell, III (the "Trustee"), Chapter 7 trustee for the estate of Jeffrey Alan Martin (the "Debtor"), and Martin Financial, Inc. ("MFI"), TMAR Ltd, LLC ("TMAR"), Q–Tan, LLC ("Q–Tan"), and Conni L. Martin (collectively, the "Defendants").[1] Currently before the Court is the Trustee's Motion for Contempt and Sanctions for Failure to Comply with Court Order. This Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. §§ 157(b)(1) and 28 U.S.C. § 1334, as a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E) & (H).

### *Background*

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on August 8, 2014. Case No. 14–11743–WHD, Doc. No. 1. The Trustee initiated this adversary proceeding on November 24, 2014, by filing a nine-count complaint, as amended March 9, 2015, against the Defendants. In his complaint, the Trustee seeks to have MFI declared an alter ego of the Debtor, to avoid multiple transfers made by the Debtor and the Defendants, to have the Defendants turn over property of the Debtor's bankruptcy estate, and to have the Defendants prepare an accounting of the Debtor's property in their possession and any transfers the Debtor made to them over the last ten years. The Trustee seeks this relief as a means to unravel "an intricate weave of fraud that [the] Debtor has constructed over many years." Am. Compl., Doc. No. 38.

Regrettably, the Court is tasked today not with determining the extent of any "weave of fraud," but with serving as the referee of a discovery dispute. On January 14, 2015, the Trustee served his first discovery requests on the Defendants. The Defendants did not respond to the Trustee's requests until March 1, 2015. When the Defendants produced documents four days later, their production was described by the Trustee as "critically lacking," due to its failure to include numerous documents. Mot. to Compel Produc. of Docs., Doc. No. 50. After unsuccessful attempts to work through the production issues with the Defendants' counsel, the Trustee filed a motion to compel production against the Defendants on April 23, 2015. *Id.* While that motion was pending, the Trustee attempted to acquire discovery from Conni Martin, who had recently been added to the case as a defendant. After Mrs. Martin, as the representative of the Defendants, failed to appear for a deposition at the end of April, the Trustee filed a

---

1. The Court previously entered a default judgment against Martin Financial, LLC, and Marada, Inc. for all claims made against the two entities. *See* Order, Doc. No. 30.

motion for sanctions. Pl.'s Mot. for Sanctions, Doc. No. 70. Even with that motion having been presented, Mrs. Martin did not respond to the Trustee's requests until the end of June, and did not produce any documents at that time.

On July 23, 2015, the Court held a hearing on the Trustee's motion to compel and his motion for sanctions. At the hearing, the Court expressed its severe disapproval of the protracted course of discovery in this case and granted the Trustee's motions. In imposing sanctions for failing to appear at the deposition, the Court ordered the Defendants to make themselves available for another deposition and to pay the Trustee's reasonable fees incurred in connection with bringing the motions and with rescheduling the deposition. In addition, the Court warned the Defendants that any further obstructing or delaying of the discovery process could lead the Court to consider much harsher sanctions in the future, including the striking of their answers and the entry of default judgment against them. On August 4, 2015, the Court ordered the Defendants to provide the Trustee with all documents responsive to the Trustee's requests for production by August 13, 2015. Order, Doc. No. 85.

On August 13, 2015, the Defendants produced over 1,000 documents, ostensibly to comply with the Court's order. Unfortunately, the production was not responsive to the Trustee's requests, instead containing documents that had already been discovered and pleadings and other documents filed by the Trustee in this proceeding. Mot. for Contempt and Sanctions, Decl. of Lisa Wolgast, Doc. No. 89. The inadequacy of this production prompted the Trustee to file the instant sanctions motion.

In his motion, the Trustee asserts that the Defendants are withholding discoverable information in violation of the Court's Order. Specifically, the Trustee avers through his motion and supporting documents [2] that the Defendants have failed to produce: (1) all account histories for properties owned or transferred by the Defendants, (2) documents detailing consideration received in exchange for the properties, (3) documents relating to the Defendants' bank accounts, (4) complete copies of tax returns, (5) financial statements, balance sheets, or profit and loss statements, (6) documents relating to the sale or transfer of properties, such as mortgages or promissory notes, and (7) documents relating to the Defendants' payment of the Debtor's personal expenses.

On September 3, 2015, the Court held a hearing on the Trustee's motion. At the hearing, the Defendants did not contest that they had failed to provide all the documents the Trustee requested by the Order's deadline, but instead presented testimony that they were unable to comply with the Court's Order due to the difficulty of sorting through their records, which they alleged are stored in a collection of boxes in a two-room office, and their inability to obtain bank records due to a notation on their accounts caused by the bankruptcy filing. The Defendants also argued that some of the documents the Trustee seeks do not actually exist. The Defendants' witness, however, could not testify to the extent of the Defendants' recordkeeping beyond vague assertions because he was not involved in that aspect of the Defendants' operations.

Given the Defendants' failure to turn over the documents requested by the

---

**2.** The Trustee supported his motion with a signed declaration from his attorney, deposition testimony from a former employee of MFI, and the affidavit of an employee of the Office of the Aiken County, South Carolina Tax Collector.

Trustee in compliance with the Court's Order, and considering their conduct throughout the discovery process, the Trustee requests that the Court sanction the Defendants by striking their answers and entering default judgment against them.

### *Discussion*

As an initial matter, the Court has no trouble finding that the Defendants have failed to comply with its August 4th Order. The Order instructed the Defendants to provide all documents responsive to the Trustee's discovery requests by August 13, 2015. The Trustee's motion is supported by sufficient evidence to conclude that the Defendants' failed to comply by that deadline, and the Defendants do not seriously challenge that point. Having established that the Court's Order has been violated, the issue for the Court is what sanctions to impose.

Federal Rule of Civil Procedure 37(b)(2)(A) (applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7037) empowers the Court to enter a sanction against a party for disobeying a discovery order. The sanctions at the Court's disposal include, but are not limited to, the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed.R.Civ.P. 37(b)(2)(A)(i–vii). Regardless of whether the Court imposes any other sanction, once the Court finds that a party has failed to comply with its order it "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Apart from that requirement, the choice of sanction is largely left to the discretion of the Court. *Phipps v. Blakeney,* 8 F.3d 788, 790 (11th Cir.1993). When considering the entry of default judgment as a sanction, it should be noted that "the severe sanction of ... default judgment is appropriate only as a last resort." *Bank of New York v. Sunshine Jr. Stores, Inc.,* 456 F.3d 1291, 1306 (11th Cir.2006) (quoting *Malautea v. Suzuki Motor Co. Ltd,* 987 F.2d 1536, 1542 (11th Cir.1993)) (internal quotation marks omitted). Indeed, because of the harshness of the sanction, "most courts, including this one, much prefer to decide cases on the merits." *Mountain Nat'l Bank v. Brackett,* 243 B.R. 910, 915 (Bankr.N.D.Ga.2000) (Drake, J.). Nevertheless, "[t]here is a need for strict adherence to Rule 37 so as to prevent parties from flouting discovery orders," *Reed v. Fulton Cnty. Gov't,* 170 Fed.Appx. 674, 675 (11th Cir.2006), and the Court must be mindful of the dual role that sanctions play: an appropriate sanction must both punish the offending conduct and serve to deter future violations, *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778,

49 L.Ed.2d 747 (1976) (per curiam) ("[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court . . . not merely to penalize those whose conduct [warranted] such a sanction, but to deter those who might be tempted to such conduct. . . ."). This is especially true when the disobedient party has acted willfully and failed to convince the Court that it used "all reasonable efforts" to comply with the order. *See United States v. Hayes,* 722 F.2d 723, 725 (11th Cir.1984) (holding that lower courts application of a "some effort" standard was an abuse of discretion). Finally, "the obedience of judicial orders is of paramount importance and . . . courts do not lightly excuse a failure to comply." *Id.* at 726.

■ In the case at bar, the Court finds that the Defendants' conduct during the course of discovery has been vexatious, dilatory, and utterly deserving of sanction. Even considering the testimony of the Defendants' witness concerning their difficulties complying with the Court's Order, the Court cannot find that they have made "all reasonable efforts" to comply with the Order. A disorganized filing system and problems with the bank should have been dealt with during the nearly eight months between the Trustee's initial request for production and the date set by the Court's Order. At the least, the Defendants could have requested a protective order, but they chose instead simply not to perform their discovery obligations. Therefore, the Court concludes that their disobedience was willful.

■ Because the Defendants have willfully disobeyed the Court's Order, the Court is compelled to enter a sanction that will both punish their disobedience and deter others from conducting themselves in a similarly errant fashion. However, at this time, the Court declines to strike the Defendants' answers and enter default judgment. Instead, the Court finds that the imposition of the sanctions enumerated in Rule 37(b)(2)(A)(i-ii) is appropriate. By "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action," Fed.R.Civ.P. 37(b)(2)(A)(i), and "prohibiting [the Defendants] from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," Fed.R.Civ.P. 37(b)(2)(A)(ii), the Court believes that the discovery doldrums in which this case is adrift might be escaped, and some resolution on the merits may yet be reached in this matter.

Accordingly, considering the discovery that the Defendants have failed to provide, the Court finds the following facts and declares them established pursuant to Rule 37(b)(2)(A)(i):

1. The Debtor has had possession, custody, or control of MFI's bank accounts;

2. MFI is the current owner of the bank account of Martin Financial, LLC (MFL), held at Regents Bank, account number ending 6979;

3. MFI pays the Debtor's personal expenses;

4. MFI has collected and continues to collect funds owed to MFL;

5. MFI, MFL, and the Debtor operate out of the same office and receive mail at the same post office box;

6. The Debtor has executed documents as the owner or as the president of MFI;

7. MFI owns or controls assets previously owned by the Debtor or MFL;

8. MFI operates the same business as operated by the Debtor and MFL;

9. On April 15, 2004, a security deed was executed in favor of MFL, securing a

promissory note payable to MFL in the original principal amount of $19,000 (hereinafter, the "Kent Mortgage");

10. On September 8, 2011, a mortgage was executed in favor of Martin Financial, a sole proprietorship operated by the Debtor, securing a promissory note payable to Martin Financial in the original principal amount of $51,800 (hereinafter, the "Stanley Mortgage");

11. MFI has collected payments owed on the Kent Mortgage and the Stanley Mortgage without remitting those payments to MFL, Martin Financial, or the Debtor;

12. On July 11, 2012, the Debtor, doing business as Martin Financial, transferred his interest in the property defined in the Trustee's Amended Complaint as Property 1 to Q–Tan for less than reasonably equivalent value, recording the transfer on August 7, 2012;

13. On October 16, 2013, the Debtor, doing business as Martin Financial, transferred his interest in the property defined in the Trustee's Amended Complaint as Property 2 to Q–Tan for less than reasonably equivalent value, recording the transfer on October 18, 2012;

14. On October 16, 2012, the Debtor, doing business as Martin Financial, transferred his interest in the property defined in the Trustee's Amended Complaint as Property 3 to TMAR for less than reasonably equivalent value, recording the transfer on December 19, 2012;

15. On June 18, 2011, the Debtor, doing business as Martin Financial, transferred his interest in the property defined in the Trustee's Amended Complaint as Property 4 to Marada, Inc. for less than reasonably equivalent value, recording the transfer on September 26, 2011.

16. On January 4, 2008, the Debtor transferred his interest in the properties defined in the Trustee's Amended Complaint as Property 5 and Property 6 to Marada, Inc. for less than reasonably equivalent value, recording the transfers on May 20, 2013.

17. On August 17, 2010, the Debtor, MFL, and Marada, Inc., transferred their interests in property in Aiken County, South Carolina, as described in the deed attached as Exhibit 9 to the Trustee's Amended Complaint, to MFI for less than reasonably equivalent value, recording the transfer on September 13, 2010;

18. In the case of each of the transfers described in paragraphs 12 through 17, the Debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer, at least one of the Debtor's creditors was entitled to payment at the time of the transfer, and none of the transferees took in good faith.

19. Between October 16, 2014, and December 4, 2014, TMAR recorded fourteen deeds (Exhibits 10 through 23 of the Trustee's Amended Complaint) transferring parcels of real property located in Aiken County, South Carolina;

20. At the same time as the deeds were recorded, mortgages (Exhibits 24 through 35 of the Trustee's Amended Complaint) payable to TDT Enterprises (hereinafter, "TDT"), a sole proprietorship operated by Conni Martin, were recorded in Aiken County, South Carolina;

21. On December 4, 2014, MFI recorded a deed (Exhibit 37 of the Trustee's Amended Complaint) transferring property located in Aiken County, South Carolina;

22. MFI has collected and received payments from the mortgagors of the mortgages made out to TDT;

23. A consulting agreement exists or existed between the Debtor and TMAR,

entitling MFL and the Debtor to $550 per week, plus commissions on the sale of real estate and notes in the amount of 5% of note sales and $900 per lot sold;

24. TMAR has made no payments to the Debtor in accordance with the consulting agreement between them.

In addition to stalling the progress of this case, the Defendants' actions in the course of discovery have also resulted in there being a severe deficiency of evidence regarding the value of the properties transferred and the value of any property of the Debtor's bankruptcy estate held by the Defendants. Consequently, as a further sanction pursuant to Rule 37(b)(2)(A)(ii), the Defendants shall be prohibited from introducing evidence concerning the value of any of the properties that have been transferred to them by the Debtor or transferred by the Defendants themselves either before or after the filing of the petition. The Defendants shall also be proscribed from introducing evidence concerning the value of any property of the Debtor's estate that they are found to have possessed or currently possess. While the Defendants are barred from presenting evidence on these issues, this sanction in no way is meant to prevent the Defendants from challenging the Trustee's evidence on these issues through cross-examination or similar procedures.

### Conclusion

It is hereby **ORDERED** that the Trustee's Motion for Contempt and Sanctions is **GRANTED,** as discussed above;

It is **FURTHER ORDERED** that the Defendants are jointly and severally liable to the Trustee for his fees and expenses in bringing the motion; and

It is **FURTHER ORDERED** that the Trustee shall submit an affidavit reflecting the fees and expenses incurred by the Trustee or on behalf of the Trustee in bringing the motion, and Defendants shall have fourteen days from the filing of the Trustee's affidavit to object to the reasonableness of the fees and expenses.

The Clerk is **DIRECTED** to serve a copy of this Order on the Trustee, the Defendants, and respective counsel.

**IT IS ORDERED**